## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

JANE DOE,

                          Plaintiff,          Hon. _____

v.                                          No. _____

FOREST HILLS SCHOOL DISTRICT,
DANIEL BEHM, Superintendant,
in his Official and Individual Capacities;
TERRY URQUHART, Principal,
in his Official and Individual Capacities;
and ANNE EDSENGA, Assistant Superintendent
and Title IX Coordinator,
in her Official and Individual Capacities;

                          Defendants.

_____/

Anne Buckleitner (P59832)
Smietanka, Buckleitner, Steffes and Gezon
4250 Chicago Drive, S.W., Suite B
Grandville, MI 49418
616/667-2217

Neena Chaudhry
National Women's Law Center
11 Dupont Circle, N.W., Suite 800
Washington, D.C. 20036
202/588-5180

## COMPLAINT AND JURY DEMAND

*This cause of action arises from Defendants' deliberately indifferent response to a student-on-student sexual assault on school premises and subsequent sex-based harassment. Defendants' failure to promptly and appropriately investigate and respond to the assault subjected Plaintiff to further sexual harassment and a hostile environment, effectively denying her access to educational opportunities. This action alleges violations of Title IX and the denial of equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution.*

Plaintiff, Jane Doe,[1] by and through her attorneys, the NATIONAL WOMEN'S LAW CENTER and SMIETANKA, BUCKLEITNER, STEFFES & GEZON, hereby files the following complaint against Defendants as captioned above.

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.

4. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

---

[1] "Jane Doe" has been substituted for Plaintiff's name for all causes of action brought through this Complaint. Plaintiff was a minor at the time of the sexual assault and aftermath complained of herein.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## II. THE PARTIES

6. Plaintiff is a female and was a minor until she turned eighteen (18) in December 2012.

7. At all material times Plaintiff was a resident of the County of Kent, State of Michigan.

8. At the time of events complained of herein, Plaintiff was a student attending a high school within the Defendant FOREST HILLS SCHOOL DISTRICT ("the School District").

9. The Defendant School District is a public educational institution located in the County of Kent, State of Michigan.

10. At all material times, Defendant DANIEL BEHM ("the Superintendent"), in his official and individual capacities, worked within the County of Kent, State of Michigan.

11. During all material times, the Superintendent was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

12. At all material times, TERRY URQUHART, ("the Principal"), in his official and individual capacities, worked within the County of Kent, State of Michigan.

13. During all material times, the Principal was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

14. At all material times, Defendant Assistant Superintendent ANNE EDSENGA, ("the Title IX Coordinator"), in her official and individual capacities, worked within the County of Kent, State of Michigan.

15. At all material times, the Title IX Coordinator was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and her employer.

16. At all material times, Plaintiff's attacker, "MM," was a student attending the Defendant School District.

### III. APPLICABLE LAW AND POLICY

17. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C.

§ 1681(a), states that

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . .

18. Title IX is implemented through the Code of Federal Regulations.  See 34 C.F.R. Part 106.

19. 34 C.F.R. § 106.8(b) provides:

> . . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

20. In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

21. In *Davis v. Monroe County Board. of Education*, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

22. *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is

> a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and
> b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Davis*, 526 U.S. at 1669–76.

23. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

24. At MCL 380.1311(2), Michigan law provides that "If a pupil . . . commits criminal sexual conduct in a school building or on school grounds, the school board, or the designee of the school board . . . shall expel the pupil from the school district permanently."

25. The Forest Hills School District's Board of Education has also adopted anti-harassment policy 5517. (Attached as Exhibit 1.) That policy defines harassment to include "inappropriate conduct that is repeated enough, or serious enough, to negatively impact a student's educational, physical, or emotional well-being." The policy further states that "harassment through any means, including electronically transmitted methods (e.g., internet. . .) may be subject to District disciplinary procedures. Such behavior is considered harassment whether it takes place on or off school property. . . if it is considered to have a negative impact on the school environment." The policy stipulates that all reports of harassment "will be investigated in accordance with AG 5517."

## IV. COMMON ALLEGATIONS

26. At all material times, the School District was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq*.

27. The School District implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

28. The School District is responsible for ensuring that all its employees are properly trained and supervised to perform their jobs.

29. The School District is responsible for the acts and omissions of its employees.

30. At the time of the attack that gave rise to the events complained of herein, Plaintiff was a 15 year old Sophomore at Forest Hills Central High School ("Forest Hills Central").

31. At the time of the attack that gave rise to this action, student "MM," was in his junior year and was a prominent athlete at Forest Hills Central.

32. MM had applied to and been chosen by Forest Hills Central through its "school of choice" program, a Michigan educational program that allows students to transfer between intermediate school districts after review by, and at the discretion of, the receiving school district. The receiving district School reviews and evaluates each applicant and his or her educational files before choosing to admit the applicant as a school of choice student.

33. When accepted to Forest Hills Central as a school of choice student, MM already had a juvenile record for Aggravated Assault, and had already attended the Kent County Adolescent Sex Offender Treatment Program.

34. On November 3, 2010 at approximately 3:00 p.m., MM violently and forcibly sexually assaulted Plaintiff in an unlocked soundproof band room located off of an unmonitored hallway at Forest Hills Central.

35. On November 4, 2010, Plaintiff notified a teacher of the assault, and the teacher notified the Principal.

36. The Principal interviewed Plaintiff, then called Plaintiff's parents to the school.

37. The Principal informed the parents that he believed Plaintiff's allegations and identified MM to them as "a special ed student," "a player," a school of choice student, and an accomplished athlete being scouted by Division I colleges; he further warned that he believed that investigation of the matter by law

enforcement would divide the student body along racial lines, because Plaintiff is white, and her attacker is African American.

38. The Principal assured the parents that he would investigate the assault whether or not the matter was referred to law enforcement.

39. The Principal told Plaintiff's parents to take time to think through whether they wanted to report the incident to the police.

40. Plaintiff's parents understood the Principal's words and actions to mean that he preferred that they not lodge a criminal complaint.

41. Nonetheless, on November 5, 2010, Plaintiff's parents returned to the school and told the Principal that they wanted the matter to be referred to the police for investigation because they were concerned that MM would continue to attack other girls.

42. One or about November 5, 2010, the Kent County Sheriff's Department began a criminal investigation.

43. On or about November 20, 2010, a second female student, a Senior, reported to the Principal that she had been sexually assaulted by MM on November 17 while in her own car in the Forest Hills Central parking lot.

44. This second victim also reported the attack to school officials and to the Kent County Sheriff's Department.[2]

---

[2] On December 6, 2010, the Kent County Prosecutor's office authorized two felony counts of Criminal Sexual Conduct (Fourth Degree) against MM for his assaults on Plaintiff and this second victim.  More than six months later, on June 27, 2011, MM pled guilty to a single count of misdemeanor assault and battery in exchange for dismissal of the two felony criminal sexual conduct charges and was sentenced to, among other things, attend Kent County's Adolescent Sexual Offender Treatment Program for a second time.

45. Despite receiving a second report of assault by MM within a month, the District conducted no investigation of the second attack.

46. School District officials never interviewed Plaintiff or her parents after the Kent County Sheriff's Department began its investigation.

47. Despite their continuing duty to investigate and address the sexual assault, from that point forward School District officials conducted virtually no investigation of the assault on Plaintiff, as detailed below in paragraphs 48 through 54.

48. The Principal knew that the assault was continuing to hold the attention of the student body because students approached the Principal's office reporting information about the assault and its aftermath.[3]

49. Despite that knowledge, the Principal kept no notes of which students made reports, what they reported, and never tried to prove or disprove what the students were reporting.

50. The Principal reviewed recorded surveillance of the hallway near the band room and other hallways around the time of the alleged attack, but took no notes as to what he had seen.

51. The School District has admitted that it kept no notes from any interviews of the Plaintiff or of MM, nor of any witnesses identified by those parties.

52. The School District's Title IX Coordinator knew of the attack but conducted no investigation at all.

---

[3] The Principal confirmed this fact to officials from the U.S. Department of Education's Office for Civil Rights (OCR), during OCR's investigation into Plaintiff's parents' allegation that the School District was not in compliance with Title IX, discussed *infra* at paragraphs 88 through 92.

53. For two and a half weeks after the sexual assault on Plaintiff, she was scheduled to share a sixth hour classroom with her attacker; to avoid her attacker, she spent those class hours in her school guidance counselor's office instead of learning in the classroom.

54. On or about November 20, 2010, school officials finally changed MM's schedule to remove him from the classroom shared with Plaintiff.

55. On or about December 1, 2010, January 3, 2011, and May 6, 2011, in response to Plaintiff's parents' inquiries School District officials told Plaintiff's parents that their investigation had been "inconclusive," so they could not reveal the results of their investigation.

56. Because Plaintiff had complained of MM's sexual assault on her, throughout the rest of the 2010 – 2011 school year MM and his friends verbally and physically harassed and frightened Plaintiff as she moved in and out of classrooms, through hallways, and around the Forest Hills Central campus, including in the gym, and athletic fields, both during and after school, and as MM "hung out" until his mother arrived to take him home.

57. Examples of continuing sexual harassment and retaliation directed at Plaintiff by MM included: throwing other students into Plaintiff as she walked down the hallway and causing her to slam into lockers; throwing his books across the hallway at her; repeatedly following Plaintiff closely in hallways and on sports fields hissing and whispering "you ugly, girl" and "you lie;" "trapping" Plaintiff in classrooms by standing in the doorway so she could not leave for her next classroom until escorted by a teacher; and throwing basketballs at

Plaintiff if she went into the gymnasium to participate in after school athletics, exclaiming "I keep missing the basket."

58. MM and his friends loudly and repeatedly denied that any attack had happened and said that Plaintiff was lying.

59. Students noted that MM appeared not to have been disciplined and concluded that Plaintiff was lying or exaggerating regarding the sexual assault.

60. Students began to sexually harass Plaintiff on the internet as well as in school.

61. In the months following the assault, anonymous students used the website "www.formspring.me" to attack Plaintiff using vicious and sexually-charged language arising from their erroneous belief that Plaintiff was lying or exaggerating the sexual assault.

62. Other students posted vulgar, demeaning, derogatory and harassing messages to and about Plaintiff on Facebook.

63. The electronically transmitted harassment questioned Plaintiff's integrity, her sexuality and sexual behavior, and her character for bringing the sexual violence to the attention of school officials.

64. On February 10, 2011, Plaintiff's mother reported the continuing harassment and gave the Title IX coordinator copies of some of the anonymous harassing messages directed at Plaintiff via the internet.

65. The messages given to the Title IX Coordinator included the following examples:  "y the fuck do u still go to fhc when it's ur fault [MM] cant play cuz ur a lying whore who overexaggerates;" "do u realize the only action ur ever going to get is from when [MM] supposivly raped u?;" and "youre fat

youre ugly you suck at soccer and you need to grow someballs and tell the

skool ur lying why do u always have to lie about everything EVERYTHING

stop ruining [MM's] life its ur fault bitch."

66. The electronically transmitted messages caused Plaintiff to withdraw from

other students and the academic environment, as detailed in paragraphs 101

through 104, below.

67. The District had and continues to have in place Board Policy 5517 regarding

"Harassment of Students" as required by MCL 380.1310b. (See policy

attached as Exhibit 1).

68. As described above, harassment is defined in Board Policy 5517 as

"inappropriate conduct that is repeated enough, or serious enough, to

negatively impact a student's educational, physical or emotional well-being"

including but not limited to harassment based upon sex . . . and would include

such activities as . . . name-calling, taunting, and other disruptive behaviors."

69. Among other things, Board Policy 5517 specifies that electronically

transmitted forms of harassment may also be subject to disciplinary measures

whether it takes place on or off school property if it has a negative impact on

the school environment.

70. Board Policy 5517 further advises that upon reporting electronic harassment

to school officials, it will be investigated.

71. Defendant Title IX Coordinator's response to Plaintiff's mother's report of

electronic harassment was limited to an email saying: "Thanks for sending

this on." No investigation was conducted.

72. The Principal told Plaintiff that he would not investigate the electronically transmitted harassment because it had occurred outside school property.

73. The School District officials' decision not to investigate the electronically transmitted harassment based upon it occurring outside school property is contrary to Board Policy 5517 and Title IX.

74. On numerous occasions using telephone, email, and personal meetings throughout the 2010-2011 school year following the attack, Plaintiff's parents advised School District officials of the problems and hostility Plaintiff was confronting in school, as detailed in paragraphs 56 through 67. They asked the Principal and Superintendent on multiple occasions throughout the 2010 – 2011 school year following the attack to make changes to ensure that the harassment of Plaintiff would stop, that she would have a safe educational environment, and that her education could continue without disruption.

75. School District officials, including Defendant Behm, Defendant Urquhart, and Defendant Edsenga made no changes to the educational environment to prevent future problems; the officials' responsive action was limited to telling Plaintiff to document ongoing and future problems by reporting future incidents and making a note of any witnesses.

76. Each time Plaintiff documented and reported ongoing problems to School District officials, the School District took no remedial measures, despite having notice that Plaintiff continued to experience sex-based harassment in school.

77. Reprimand of MM or a change in his placement was mandated by MCL 380.1311(2) and MCL 300.530(d) on the basis of the assault alone and would have been consistent with internal school policy.

78. On December 10, after criminal charges had been authorized against MM, Plaintiff's parents again met with the Superintendent and an Assistant Superintendent and requested that they make changes to ensure that the harassment of Plaintiff would stop, that Plaintiff would have a safe educational environment, and that Plaintiff's education could continue without disruption.

79. Plaintiff's parents raised as a possibility that the school could enforce its existing "sports code of conduct," which policy revoked student athletes' privilege of playing sports if charged with a crime.

80. On information and belief, school officials subsequently ordered that MM be benched for a period of time.

81. Unknown to Plaintiff at the time, MM's mother responded by filing a Notice of Intent to sue Forest Hills School District in the Michigan Court of Claims for suspending MM "from athletic participation in high school sports in an arbitrary manner and inconsistent with the rules and procedures set forth in Athletic Code Contract . . . thereby resulting in, among other things, the loss of college scholarships, etc."

82. Also unknown to Plaintiff at the time, MM's counsel attacked Plaintiff's credibility to School officials and asserted that Plaintiff had lied about the assault.

83. Because School District officials never investigated Plaintiff's allegations and never notified her of MM's counsel's attacks upon her credibility, Plaintiff never had the opportunity to rebut those attacks.

84. Thereafter currently unknown Forest Hills School District officials and MM's mother achieved a secret "negotiated conclusion" as a result of which the attacker's mother agreed not to initiate litigation against School District in exchange for certain currently unknown actions by Forest Hills school officials.

85. On information and belief, Defendants "negotiated away," at Plaintiff's expense, the school's compliance with its statutory responsibility under Title IX to respond to Plaintiff's sexual assault in an effort to keep the sexual violence on school premises from becoming public through discipline of MM and to avoid the "hassle" of his threatened lawsuit.

86. Beginning in July 2011, by and through counsel, Plaintiff's parents reminded the School District officials of their duties under Title IX to investigate, reminded officials of the mandated administrative standard of review for its investigation, and reminded school officials of their duty to inform Plaintiff's parents of the results of their investigation.

87. School officials refused to provide any investigative findings to Plaintiff's parents, and never notified them of any appellate recourse.

88. On August 12, 2011, Plaintiff's parents filed a complaint with the United States Department of Education, Office for Civil Rights (OCR) alleging that the District failed to promptly and appropriately respond to alleged sexual

harassment, resulting in a student, on the basis of sex, being excluded from participation in, being denied the benefits of, or being subjected to discrimination in any District education programs or activities in violation of the Title IX implementing regulation at 34 C.F.R. § 106.31.

89. OCR investigated and found by a preponderance of the evidence that the District failed to promptly and appropriately respond to alleged sexual harassment in violation of Title IX requirements. *See* OCR Letter of September 28, 2012, attached as Exhibit 2.

90. Plaintiff's parents also complained that the District failed to adopt grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of student complaints under Title IX in violation of the Title IX implementing regulation at 34 C.F.R. § 106.8(b).

91. OCR also found that the District's grievance procedures did not comply with Title IX requirements.

92. On September 28, 2012, the District executed a Resolution Agreement with OCR to remedy its procedural Title IX violations.

93. Plaintiff's personal damages, including those arising from her psychological distress, loss of standing in her community, and damage to her reputation, were not addressed through the Resolution Agreement.

94. Plaintiff suffered sex-based harassment that was severe, pervasive, and objectively offensive.

95. The sex-based harassment deprived Plaintiff of access to the educational opportunities or benefits of the school.

96. School District officials, including Defendants Behm, Urquhart, and Edsenga, had the authority to take remedial action to correct the sex-based harassment.

97. The School District and its Defendants had actual knowledge of the sex-based harassment.

98. The School District and its Defendants responded with deliberate indifference to the sex-based harassment.

99. Plaintiff became afraid to stay after school and stopped playing soccer, cheerleading, marching in the school band and withdrew from attending school events.

100. Plaintiff found it difficult to concentrate in the classroom and frequently became tearful and left class.

101. Instead of staying in class to receive instruction, Plaintiff spent hours of each school day in the school guidance office.

102. Plaintiff became too afraid to stay after school to get help from teachers as she had previously done.

103. Plaintiff required mental health counseling and increased medication for depression and anxiety to cope with the stress of attending Forest Hills Central.

104. Plaintiff's grades dropped.

105. When Plaintiff realized that even after MM pled guilty to assault and battery he would be returning to Forest Hills Central for the 2011-2012 school year with no discipline or change in his boundaries for her protection, she was forced to leave the school to avoid the continuing hostile environment.

106.     The School District's response and its officials' conduct was such that future reasonable students in Plaintiff's circumstances would be chilled from reporting sexual harassment.

107.     As a direct and proximate result of the harassing educational environment created by Defendants' deliberately indifferent response to the sexual assault and subsequent harassment, as well as violations of her Fourteenth Amendment rights, Plaintiff has suffered and continues to suffer psychological damage, emotional distress, loss of standing in her community, and damage to her reputation, and her future relationships have been negatively affected.

108.     Plaintiff has required ongoing counseling and elevated levels of medication to address her depression and anxiety caused by Defendants' conduct and the resulting harassing educational environment.

109.     Plaintiff has also been deprived of a normal childhood education due to Defendants' conduct and the resulting educational environment.

110.     Plaintiff has also been damaged by missed educational opportunities and her future earning capabilities have been damaged by Defendants' conduct and the resulting hostile educational environment.

**COUNT I**
**VIOLATION OF TITLE IX**
**AS TO DEFENDANT FOREST HILLS SCHOOL DISTRICT**
**(20 U.S.C. § 1681, *et seq*.)**
**(The School's Deliberate Indifference**
**to Alleged Sexual Harassment)**

Paragraphs one through 110 are incorporated by reference as if stated in full herein.

111.    The sex-based harassment articulated in the Plaintiffs' General Allegations was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

112.    The Defendant School District created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because

      a) Plaintiff was a member of a protected class;

      b) she was subjected to sexual harassment in the form of a sexual assault by another student;

      c) she was subjected to harassment based on her sex; and

      d) she was subjected to a hostile educational environment created by the School District's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

113.    Defendant School District and its officials had actual knowledge of the sexual assault and the resulting harassment of Plaintiff created by its failure to investigate and discipline Plaintiff's attacker in a timely manner and consistent with its own policy and federal and state law.

114.    The Defendant School District's failure to promptly and appropriately respond to the alleged sexual harassment, resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

115.    Defendant School District failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Plaintiff.

116.    Defendant School District persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

117.    Defendant School District engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

118.    This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

119.    Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant School District's deliberate indifference to her rights under Title IX.

**COUNT II**
**VIOLATION OF TITLE IX**
**AS TO DEFENDANT FOREST HILLS SCHOOL DISTRICT**
**(20 U.S.C. § 1681, *et seq*.)**
**(Retaliation by Withholding Protections Otherwise Conferred by Title IX)**

Paragraphs one through 119 are incorporated by reference as if stated in full herein.

120.    Immediately after Plaintiff advised the Principal of the sexual violent attack, he discouraged her parents from referring the matter to law enforcement for criminal investigation.

121.    The Principal had previously reassured Plaintiff's parents that he would investigate the attack regardless of whether the matter was referred to law enforcement.

122.    Once Plaintiff and her parents insisted upon involving law enforcement for a criminal investigation, however, the Principal and the other School District officials retaliated against Plaintiff by declining to investigate the matter or to otherwise comply with their responsibilities as mandated by Title IX.

123.    Fellow students harassed Plaintiff for reporting her attack to the school and police.  Plaintiff's parents reported this harassment to School officials, who declined to intervene to stop it.

### COUNT III
### 1983 VIOLATION AS TO
### DEFENDANTS FOREST HILLS SCHOOL DISTRICT,
### BEHM, URQUHART, and EDSENGA
### (42 U.S.C. § 1983)

Paragraphs one through 123 are hereby incorporated by reference as if set forth in full herein.

124.    Under the Fourteenth Amendment, Plaintiff had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

125.    Defendants Behm, Urquhart, and Edsenga were all state actors acting under the color of state law.

126.    Defendants each subjected Plaintiff to violations of her right to personal security and bodily integrity and Equal Protection of Laws by: failing to investigate MM's misconduct; failing to appropriately discipline MM; failing

to adequately train and supervise Behm, Edsenga and Urquhart; and manifesting deliberate indifference to the sexual assault and ongoing harassment of Plaintiff by other students, including MM.

127. The School District has and/or had unconstitutional customs or policies of a) failing to investigate evidence of criminal and tortious misconduct against School District students in the nature of violations of their right to personal security and bodily integrity and b) failing to adequately train and supervise School District employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

128. On information and belief, the School District has followed these unconstitutional customs and policies not only with regard to Plaintiff but also with regard to criminal and tortious misconduct committed against other School District students.

129. The School District's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

130. Defendants Behm, Urquhart, and Edsenga are or were at the time of events complained of within, policymakers for the purpose of implementing the School District's unconstitutional policies or customs.

131. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant School

District's deliberate indifference to her rights under the Fourteenth

Amendment.

**COUNT IV**
***MONELL* LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE**
**AS TO RESPONSE TO SEXUAL ASSAULT**
**AS TO DEFENDANT FOREST HILLS SCHOOL DISTRICT**
**(42 U.S.C. § 1983)**

Paragraphs one through 131 are hereby incorporated by reference as if set forth in

full herein.

132.     Defendants Behm, Urquhart, and Edsenga, were "state actors" working for

Forest Hills School District, a federally funded school system.

133.     Defendants Behm, Urquhart, and Edsenga acted under "color of law"

when refusing to respond to Plaintiff's sexual assault on school premises.

134.     Defendants Behm, Urquhart, and Edsenga failed to preserve Plaintiff's

constitutional right to equal protection as guaranteed by the Fourteenth

Amendment.

135.     Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff

had the right to equal access to an educational environment free from

harassment and discrimination.

136.     Defendants Behm, Urquhart, and Edsenga should have known that their

response to sexual assault allegations must comply with federal law,

particularly as outlined in Title IX's published and widely promulgated

implementing regulations.

137.     Defendants Behm, Urquhart, and Edsenga each violated Plaintiff's right to

equal access by:

a.  Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

b. Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation;

c.  Failing to take steps to protect the Plaintiff as necessary, including interim steps taken prior to the final outcome of the investigation;

d.  Failing to provide a grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence.  The procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights;

e. Failing to use a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures; and

f.  Failing to notify both parties of the outcome of the complaint.

138.    Defendant Forest Hills Schools violated Plaintiff's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

139.    These policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

140.    Defendants' actions and lack of actions were the proximate cause of Plaintiff's emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a result of Defendant School District's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

**WHEREFORE**, Plaintiff respectfully requests judgment in her favor and against Defendants Forest Hills School District, and Defendants Behm, Urquhart, and Edsenga, as follows:

A.  Compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances;

B.  Punitive damages;

C.  Injunctive relief requiring Defendant School District to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it.

D.  Statutory interest;

E.  Costs; and

F.  Reasonable attorney fees.

**JURY DEMAND**

Now Comes the Plaintiff, Jane Doe, by and through her attorneys, Smietanka, Buckleitner, Steffes and Gezon and the National Women's Law Center, and demands a trial by jury.

SMIETANKA, BUCKLEITNER,
STEFFES & GEZON

/s/ Anne Buckleitner

_____
Anne Buckleitner (P59832)
Co-Counsel for Plaintiff Jane Doe
4250 Chicago Drive, SW, Suite B
Grandville, MI  49418
616/667-2217

Dated:  April 18, 2013

NATIONAL WOMEN'S LAW CENTER

/s/ Neena Chaudhrey

_____
Neena Chaudhry
Co-Counsel for Plaintiff Jane Doe
11 Dupont Circle, N.W., Suite 800
Washington, D.C., 20036
202/588-5180

Dated:  April 18, 2013

26