UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

JANE DOE,

    Plaintiff,

v.

FOREST HILLS SCHOOL DISTRICT,
DANIEL BEHM, Superintendent, in his
Official and Individual Capacities;
TERRY URQUHART, Principal, in his
Official and Individual Capacities; and
ANNE EDSENGA, Assistant Superintendent
and Title IX Coordinator, in her Official and
Individual Capacities;

    Defendants.

Case No.: 1:13-cv-428

Hon. Paul L. Maloney

Anne Buckleitner (P59832)
Smietanka, Buckleitner, Steffes and Gezon
Attorneys for Plaintiff
4250 Chicago Drive SW, Suite B
Grandville, MI 49418
(616) 667-2217
alb@smietankalaw.com

Neena Chaudhry
National Women's Law Center
11 Dupont Circle NW, Suite 800
Washington, DC 20036
(202) 588-5180
nchaudhry@nwlc.org

Craig A. Mutch (P27786)
Thomas R. Wurst (P30177)
Catherine A. Tracey (P63161)
Miller Johnson
Attorneys for Defendants
250 Monroe Avenue NW, Suite 800
Grand Rapids, MI 49503
(616) 831-1700
mutchc@millerjohnson.com
wurstt@millerjohnson.com
traceyc@millerjohnson.com

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO EXCLUDE IRRELEVANT AND/OR PREJUDICIAL EVIDENCE OF HARASSMENT THAT WAS NOT KNOWN TO THE DISTRICT

Table of Contents

Page

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF RELEVANT FACTS ..............................................................1

III. LAW AND ARGUMENT ......................................................................................3

    A. Plaintiff Proffers Irrelevant Evidence That Is Inadmissible, And Should Be Excluded..............................................................................3

IV. CONCLUSION.....................................................................................................10

## Index of Authorities

Page

**Cases**

*Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir. 1994) .................................................... 4

*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999) ............................................................................................................................ 4

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998) ................................................................................................................... 4, 5

*Johnson v. Galen Health Inst., Inc.*, 267 F. Supp. 2d 679 (E.D. Ky. 2003) .................................. 5

*Martin v. Swartz Creek Cmty. Schs.*, 419 F.Supp.2d 967 (E.D.Mich.2006) ................................ 4

*Nelson v. Lancaster Independent School District No.* 356, 2002 U.S. Dist. LEXIS 3093 (D. Minn. 2002) ................................................................................................... 5

*Noble v. Branch Intermediate Sch. Dist.*, 2002 U.S. Dist. LEXIS 19600, (W.D. Mich. 2002) ................................................................................................................ 5

*Patterson v. Hudson Area Sch.*, 2010 U.S. Dist. LEXIS 9588 (E.D. Mich 2010) .................. 5, 6, 9

*Peer v. Porterfield*, 2007 U.S. Dist. LEXIS 1380 (W.D. Mich. 2007) ........................................... 5

*Soper v. Hoben*, 195 F.3d 845 (6th Cir. 1999) .............................................................................. 4

*Warren v. Reading Sch. Dist.*, 278 F.3d 163 (3d Cir. 2002) ......................................................... 5

*Williams v. Nashville Network,* 132 F.3d 1123 (6th Cir. 1997) .................................................... 4

*Winzer v. School Dist. for City of Pontiac*, 105 Fed.Appx. 679 (6th Cir. 2004) ........................... 5

**Statutes**

20 U.S.C. § 1682 ............................................................................................................................ 5

*Williams v. Bd. of Regents*, 477 F.3d 1282 (11th Cir.2006) ......................................................... 5

Index of Authorities
(continued)

Page

**Rules**

Fed. R. Civ. P. 802 .................................................................................................................. 1

Fed. R. Evid. 401 .................................................................................................................... 3

Fed. R. Evid. 402 ................................................................................................................. 1, 3

Fed. R. Evid. 403 ................................................................................................................. 1, 4

I.  **INTRODUCTION**

Defendant Forest Hills Public Schools moves for an Order prohibiting Plaintiff Jane Doe from introducing irrelevant references, evidence and argument concerning acts of alleged harassment that were not known to Defendant Forest Hills Public Schools at the time Plaintiff alleges she was subjected to harassment. Because Title IX conditions liability on acts of harassment for which a defendant school had "actual knowledge," Plaintiff's evidence does not have any tendency to make the existence of any fact that is of consequence to the determination of Plaintiff's "deliberate indifference" claim more probable or less probable than it would be without the evidence, and is therefore not admissible under Fed. R. Evid. 402. Further, even if such evidence were relevant to Plaintiff's remaining claims, it is not admissible under Fed. R. Evid. 403 because it would be unduly prejudicial, confusing, and misleading to the jury. Allowing evidence of alleged harassment that was not known to District officials would make it difficult for the jury to evaluate the reasonableness of the District's actions based solely on the information they had at the time, as the jury must do. It would also confuse them about what the District actually knew at the time and what Plaintiff claims she was experiencing but did not report, improperly inviting the jury to review Schools Officials actions with the benefit of 20/20 hindsight. Accordingly, the District objects to the admission of this irrelevant and prejudicial evidence and moves this Court for an Order excluding such evidence.

II.  **STATEMENT OF RELEVANT FACTS**

Plaintiff admits that, apart from her initial complaint that she was assaulted, she never complained to any administrators at the school about subsequent instances of harassment or intimidation. (ECF 92, Doe 93; ECR 75, Doe 72). Indeed, Plaintiff testified that she often did not even tell her parents about the alleged harassment and when she did, it was well after the fact. (ECF 75, Doe 114). The only complaints of alleged harassment were made by Plaintiff's

parents, and they documented those complaints in writing. (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72). Nevertheless, in Plaintiff's deposition and her briefs supporting her motion for summary judgment and opposing Defendants' motion for summary judgment, she proffered evidence of alleged harassment that neither she nor her parents reported to school officials. Over the course of the 2010/11 school year, when Plaintiff alleges she experienced severe and pervasive harassment from MM and her peers, Plaintiff and her parents made the following complaints of harassment[1]:

1. **November 4, 2010: Plaintiff complained that she was sexually assaulted by a fellow student.**

2. **January 24, 2011: Plaintiff's mother sent email to Defendant's Title IX Coordinator, Anne Edsenga, which stated in relevant part that "[Jane] did try to attend a [basketball] game recently, but comments made by a group of boys forced her to leave." Jane's mother also stated that "subtle instances of intimidation continue," but did not report any specific incident in which MM harassed Plaintiff. (ECF 75, Ex. 22)**

   **Edsenga responded that school officials were not aware of any intimidation of Jane by MM or others, but said that to the extent things are happening to Jane "we want and need to hear about them," and emphasized that "we really need to hear about specific incidents when they occur so that we can intervene." Plaintiff's mother responded on February 4, 2011 that MM's <u>presence</u> at FHC "is a constant reminder of a situation that should never had taken place" but did not clarify any "subtle intimidation" by MM. On the contrary, she states that she and her husband "often ask our daughters if [MM] was at school or if there was there anything unusual that happened or about what other kids are saying or if they are ok" but "<u>it is difficult to decipher their responses because our children appear to be more concerned about relationships with peers than they are with the little intimidating things</u> as a result of this situation." (ECF 75, Ex. 24-25).**

---

[1] Plaintiff's parents did have other communications with School Officials, where they complained that MM's continued <u>presence</u> at school negatively impacted her environment, but the following are the only complaints of arguably new issues.

2

3. **February 2011:** Plaintiff's mother reported "hurtful" messages on Formspring and provided Edsenga with copies of anonymous Formspring posts from January 29 – 31, 2011. (ECF 75, Ex. 27).

   Plaintiff's mother also indicated that MM had "stepped up his intimidation while at school yesterday and it that two of [Jane's] teachers observed his antics." (ECF 87, Ex. 27). Plaintiff's mother never specified the "intimidation," Plaintiff testified she was referring to one occasion after Yoga class, when John "intimidated" her by standing outside the locker room talking to his friends (ECF 87, Doe 67, 104). Jane's teacher noticed that Jane had not left, and asked her what was wrong. The teacher then told John he needed to leave and escorted him away. (ECF 75, Doe 67-69).

4. **April 15, 2011:** Plaintiff's mother informed Edsenga that MM "walked behind her, whispering things, as she was walking to the [soccer] field." Plaintiff's mother explained that they were in the same place because MM was watching a track meet and Jane had a soccer game. (ECF 75, Ex. 29).

5. **April 19, 2011:** Plaintiff's mother informed Edsenga that MM will push another student into her when he walked down the hall. (ECF 75, Ex. 31).

6. **May 6, 2011:** Plaintiff's parents met with School Officials reported that "small acts of intimidation continue." Plaintiff was (again) asked to diary specific incidents of intimidation or harassment so that the District could respond. She never recorded any harassment or intimidation. (ECF 75, Ex. 32).

Though these are the only communications to School Officials regarding the alleged ongoing harassment by MM or others, during Plaintiff's deposition and in briefs submitted to the Court, Plaintiff complained of numerous acts of alleged harassment which neither she nor her parents ever reported to School Officials. The District objects to the admission of that irrelevant and prejudicial evidence and moves this Court for an Order excluding such evidence.

### III. LAW AND ARGUMENT

    **A. Plaintiff Proffers Irrelevant Evidence That Is Inadmissible, And Should Be Excluded.**

3

"Evidence that is not relevant is not admissible." Fed. R. Evid. 402. Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact <u>that is of consequence to the determination of the action</u> more probable or less probable than it would be without the evidence."

Even relevant evidence may, however, be inadmissible if "its probative value is substantially outweighed by the danger of unfair prejudice;" of it its admission may lead to "confusion of the issues;" mislead the jury; or create "undue delay, a waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission." *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994). The determination of whether evidence is relevant and, if so, whether it should be excluded due to possible unfair prejudice, is within the discretion of the trial court. *Williams v. Nashville Network*, 132 F.3d 1123 (6th Cir. 1997).

It is well settled that, under Title IX, a defendant school district may not be held liable for sexual harassment unless it had **actual knowledge** of the harassment. *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642, 650, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998). *See also Martin v. Swartz Creek Cmty. Schs.*, 419 F.Supp.2d 967, 972-74 (E.D.Mich.2006) (noting that the Supreme Court has rejected a "knew or should have known" standard in the context of teacher-student harassment); *Soper v. Hoben*, 195 F.3d 845, 855 (6th Cir. 1999) (finding that the knowledge element could not be met when the "defendants did not have actual knowledge of the harassment until after the fact"). In cases involving alleged student-on-student sexual harassment, a school district may not be liable under Title IX absent

4

evidence that it ignored known acts of student-on-student sexual harassment. *Patterson v. Hudson Area Sch.*, 2010 U.S. Dist. LEXIS 9588 (E.D. Mich 2010), *citing Winzer v. School Dist. for City of Pontiac*, 105 Fed.Appx. 679, 681 (6th Cir. 2004).

The knowledge element may be satisfied when "<u>an appropriate official</u> has <u>actual knowledge</u> of a substantial risk of abuse to students based on prior complaints by other students." *Johnson v. Galen Health Inst., Inc.*, 267 F. Supp. 2d 679, 687-88 (E.D. Ky. 2003). "An 'appropriate prson' under [20 U.S.C.] § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser*, 524 U.S. at 290; *Williams v. Bd. of Regents*, 477 F.3d 1282, 1289 (11th Cir.2006). [add].

"In applying Gebser, appellate courts have required actual knowledge by the school board itself, the school superintendent, or, at least, a school principal." *Peer v. Porterfield*, 2007 U.S. Dist. LEXIS 1380, *27-28 (W.D. Mich. 2007); *Noble v. Branch Intermediate Sch. Dist.*, 2002 U.S. Dist. LEXIS 19600, *44-45 (W.D. Mich. 2002). Courts have further held that "nonsupervisory personnel are not 'appropriate persons' under the statute because they do not have authority to terminate or suspend the offending individual." *Peer* at 28; *Noble* at 45. For example, in *Nelson v. Lancaster Independent School District No. 356*, 2002 U.S. Dist. LEXIS 3093 (D. Minn. 2002), the court found that school bus drivers, teachers, and custodians were not "appropriate persons," because they did not have the requisite authority to take corrective action under *Gebser*. Similarly, in *Warren v. Reading Sch. Dist.*, 278 F.3d 163 (3d Cir. 2002), the court found insufficient evidence to conclude that the school's guidance counselor, who had actual knowledge of abuse, was cloaked with sufficient authority to be a responsible person under Title IX. In the present case, Superintendent Behm, Principal Urquhart or Title IX Coordinator Edsenga would be "appropriate persons," as they had the authority to at

least suspend any offending student. Teachers, counselors and other non-administrative staff would not be "appropriate persons."

Recognizing that a school district may only be liable under Title IX when appropriate school officials had "actual knowledge" of severe and pervasive harassment, the trial court in *Patterson v Hudson Area Schools,* 2010 U.S. Dist. LEXIS 9588 (2010),[2] excluded all references to alleged harassment that had not been reported to appropriate officials. After describing the controlling legal standards, the Court aptly explained:

> As the foregoing cases (as well as other cases relied upon by Plaintiff) reveal, only conduct which has been brought to the attention of <u>an appropriate Defendant official</u> would be relevant in this case. This makes sense, of course, because a party cannot act with "deliberate indifference to acts of harassment" unless that party had knowledge of such acts. (emphasis added).

Like the *Patterson* court, which found unreported harassment irrelevant, granted the Defendant's motion in limine, and excluded all references to harassment, this Court should exclude references to harassment that neither Plaintiff nor her parents reported to School Officials.

In the present case, during Plaintiff's deposition and in briefs submitted to the Court, Plaintiff complained of following acts of alleged harassment which neither she nor her parents ever reported to School Officials.

> 1. **In Plaintiff's briefs, she claims she was "harassed and shunned for months – in person and online." As explained above, the only online "online" harassment reported to the District was the anonymous Formspring posts from January 29 – 31, 2010. (ECF 87, Ex. 27; ECF 87, Mrs. Doe 110-11). Plaintiff should not be permitted to testify that she was harassed online "for months" when she never reported that to the District. Plaintiff also never complained to School Officials that she was being "harassed" for months by other students. (Pl. Parents'**

---

[2] A copy of this unpublished opinion is attached.

       Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).

2. In Plaintiff's briefs, she states that MM "would react to her presence" by pushing or throwing people or books into her and laughing at her. (Pl. Brief p. 8). Apart from the one report made in April 2011, neither Plaintiff nor her parents reported that MM would push people at Plaintiff. Neither she nor her parents ever reported that MM threw people or books at Plaintiff, nor did they ever report to School Officials that "MM laughed at her." (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).

3. In Plaintiff's briefs, she states that "at times, John hissed at Plaintiff." Not only was "hissing" never reported to School Officials, Plaintiff ever even testified at her deposition that MM had ever "hissed" at her. (ECF 86, Ex. 15).

4. In Plaintiff's briefs, she claims that "at various times MM blocked her exit from areas – a classroom, a locker room, and bathroom - until an adult intervened." Neither Plaintiff nor her parents ever told School Officials that MM blocked her exit from areas. (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).

5. In Plaintiff's briefs, she claims that "her friends noticed the silence among other students when Plaintiff passed near, that she got 'the eye,' and characterized the environment as 'a lot of hate' directed toward Plaintiff." (SJ p 8). This was never reported to School Officials by Plaintiff, her parents or her friends. (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).

6. Plaintiff testified that she had to "hide" in bathrooms or classrooms to avoid MM. (ECF 75, Doe 69-70, 72-73, 84-85). Plaintiff claims there were "a few times" where she was caught in the ladies room because MM would be outside by the drinking fountain talking to his friends, and she didn't want him to see her. (Doe 100). Neither Plaintiff nor her parents reported this to School Officials. (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).

7. Plaintiff testified that, approximately one week after the alleged assault, MM pushed another student at her and the kid threw his books her. Neither Jane nor her parents reported this incident to Principal Urquhart or other School Officials (ECF 75, Doe 66; Pl.

7

Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).

8. Plaintiff testified that her car was "keyed" when she attended a basketball game. Neither Plaintiff nor her parents reported this to School Officials. (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).

9. Plaintiff testified that, at some point after December 2010, she was confronted by a girl who wanted to fight her because she reported MM. (ECF 75, Doe 81). This was broken up by a security guard, but was never reported to School Officials. (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).

10. Plaintiff testified that MM "intimidated" her when she was trying to leave the locker room after yoga. She explained that MM was standing there talking to his friends and "knew I was trying to leave so he was intimidating me." (ECF 75, Doe 67). On a couple occasions, Plaintiff's parents referenced "subtle intimidation" by MM, but they did not report this (or any other) specific incident of intimidation. (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).

11. Plaintiff testified that, if MM saw her, he "always" said: "Girl, you ugly." He would also allegedly say "You lie – you tell the truth." (ECF 75, Doe 70, 84-85). Plaintiff claims she and MM shared lunch, so she had to change and go to the library instead of lunch. She further claims that in the cafeteria, he would say "you ugly" and "you a liar." (ECF 75, Doe 102). Neither Plaintiff nor her parents ever reported these alleged comments to School Officials. (ECF 75, Doe 102). They also never advised School Officials that she and MM had negative interactions during a shared lunch period. (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).

12. Plaintiff testified that, if MM had a basketball, "sometimes" he threw pretending he was trying to make a basket. (ECF 75, Doe 70). Plaintiff clarified that, during soccer try-outs, she was walking through the basketball court to get to her trainer. MM shot a basketball, but really threw it, and it bounced to the wall in front of her." MM said: "oops, sorry, I suck at basketball." (ECF 75, Doe 83). He did not hit her with the basketball, and she did not report it to anyone. (ECF 75, Doe 83). Her parents did not report this incident to School Officials. (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).

13. Plaintiff claims MM would go into Blackwell's classroom while she was in there. She did not complain to anyone (ECF 87, Doe 101).

14. In December 2010, Plaintiff's parents wrote an email to Officer Glenn Neville referencing continued harassment of Plaintiff. Officer Nevelle is not a District employee and any notice to him cannot establish knowledge on the part of School Officials. Also, Plaintiff's mother indicated that she was unsure if that email was sent. (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).

15. December 10, 2010 – Plaintiff's father sent an email to Principal Urquhart stating that MM's "<u>presence</u> in school creates a hostile environment for my daughter," but does not identify any specific acts of intimidation or harassment by MM or others. (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11; ECF 75, Doe 72).[3]

16. At Plaintiff's mother's deposition, she provided Facebook communications from April 2013, after Plaintiff filed this federal lawsuit, in which FHPS alumni discussed Plaintiff and. These were never before produced to the District (ECF 75, Mrs. Doe 21, 110-11).

Because the above alleged acts of harassment or intimidation were not brought to the attention of appropriate school officials, Plaintiff should not be permitted to refer to or offer evidence and argument about them. Nor should she be permitted to refer to, offer evidence, or make arguments that she was subjected to daily, consistent or ongoing harassment by MM or others that neither she nor her parents reported. As explained above and as found by the court in *Patterson, id.*, that evidence is irrelevant. It would also confuse the jury about what instances of alleged harassment or intimidation the District had actual knowledge of, triggering Title IX liability, and what instances of alleged harassment or intimidation that Plaintiff was experiencing but did not report, improperly inviting the jury to review Schools Officials actions with the benefit of 20/20 hindsight. The Court should therefore grant Defendant's Motion In Limine and

---

[3] Mrs. Doe's chronology references concerns regarding "intimidation" at the December 10, 2010 meeting with Behm and Edsenga, but Mr. Doe's contemporaneous notes regarding that meeting do not (Pl. Parents' Chron. Notes of Communications, attached as Ex. 1; ECF 75, Doe 10-11, ECF 75, Doe 72).

9

exclude any references, evidence and argument concerning acts of alleged harassment or intimidation that were not known to Defendant Forest Hills Public Schools at the time Plaintiff alleges she was subjected to harassment.

## IV. CONCLUSION

Based on the foregoing, Defendant Forest Hills Public Schools respectfully requests that this Court enter an order precluding Plaintiff from presenting irrelevant and/or prejudicial evidence about harassment and/or intimidation that neither she nor her parents reported to School Officials.

Dated: May 7, 2015          By /s/ Catherine A. Tracey
                            MILLER JOHNSON
                            Thomas R. Wurst (P30177)
                            Catherine A. Tracey (P63161)
                            wurstt@millerjohnson.com
                            traceyc@millerjohnson.com

10

MJ_DMS 27056578v1 89091-25